UNITED STATES, Appellee,

v.

Willie L. KING, Staff Sergeant
U.S. Army, Appellant.

No. 66,316.
CM 9000332.

U.S. Court of Military Appeals.

Argued Nov. 14, 1991.

Decided Feb. 21, 1992.

For Appellant: *Captain Michael P. Moran* (argued); *Major Michael J. Kelleher* and *Captain Alan M. Boyd* (on brief); *Colonel Robert B. Kirby* and *Lieutenant Colonel Russell S. Estey.*

For Appellee: *Captain Steven M. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief); *Captain Kenneth H. Goetzke.*

*Opinion of the Court*

COX, Judge:

This appeal requires us to decide whether a particular specification drawn under

Article 134, Uniform Code of Military Justice, 10 USC § 934, states an offense. Specification 2 of Charge II alleges that appellant

did ... wrongfully have sexual intercourse with Private First Class ... [name], a woman not his wife.

Under the circumstances of this case, we hold that an offense was not stated.

### I

For reasons not apparent to us, both trial counsel and the military judge continually referred to the foregoing as an "adultery" specification. Adultery has these elements:

(1) That the accused wrongfully had sexual intercourse with a certain person;

(2) That, at the time, *the accused or the other person was married to someone else;* and

(3) That, under the circumstances, the conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 62b, Part IV, Manual for Courts-Martial, United States, 1984 (emphasis added).[1]

■ "Fornication," on the other hand—which, like specification 2, involves no allegation of marriage—

may be defined as sexual intercourse between two unmarried persons. In a broader sense, any illicit sexual intercourse which does not amount to adultery constitutes fornication.

1. In the case of officers, adultery can be charged alternatively as conduct unbecoming an officer, under Article 133, Uniform Code of Military Justice, 10 USC § 933.

2. Adultery has been made criminal in many societies. Most notably in the Judeo-Christian tradition, Moses announced the offense as being one included in The Ten Commandments:

And God spake all these words, saying, ... Thou shalt not commit adultery.

Exodus 20:14 (The King James Version at 56, Thomas Nelson Publishers, 1970). For an excellent history of the offense of adultery in military law, *see United States v. Hickson,* 22 MJ 146 (CMA 1986).

2 *Wharton's Criminal Law* § 217 at 361 (C. Tortia 14th ed. 1979).

■ Fornication was not an offense at common law *unless conducted openly and notoriously.* It was, however, punished by the Church. *Id.*[2] Fornication is also not normally a crime in the military. As this Court observed over 40 years ago:

Congress has not intended by Article 134 and its statutory predecessors to regulate the wholly private moral conduct of an individual. *It does not follow, however, that fornication may not be committed under such conditions of publicity or scandal as to enter that area of conduct given over to the police responsibility of the military establishment.*

*United States v. Snyder,* 1 USCMA 423, 427, 4 CMR 15, 19 (1952) (emphasis added). *See also United States v. Berry,* 6 USCMA 609, 20 CMR 325 (1956).

### II

Appellant was a drill sergeant stationed at Fort Lee, Virginia. His sexual partner, a female private first class, was stationed at Fort Lee for advanced individual training. Appellant asked her for a date. The two met at a local K Mart and proceeded to a local motel. At the motel, they allegedly engaged in sexual intercourse.[3] The illicit relationship came to light several weeks later, and appellant was charged with a violation of a Fort Lee regulation prohibiting social relationships with trainees, wrongful sexual intercourse, and obstruction of justice, in violation of Article 92, UCMJ, 10 USC § 892, and Article 134.[4]

3. The PFC testified, "We had sex." She did not specify that the "sex" included sexual intercourse.

4. As is typical in most appeals involving a servicemember's adulterous relationships with subordinates, appellant was tried and convicted of several offenses arising from the same sexual liaison. The obstruction-of-justice charge came about as a result of appellant's efforts to have the PFC alter her testimony. Appellant was also charged with, but acquitted of, drunk driving, in violation of Article 111, UCMJ, 10 USC § 911. Appellant was sentenced to a bad-conduct discharge.

At trial, appellant moved to have the wrongful-sexual-intercourse specification dismissed on two grounds. First, he argued that the evidence was insufficient to prove that he and the PFC had engaged in sexual intercourse. Second, he contended that the specification failed to allege a chargeable offense. Finally, he urged that, even if the specification properly alleged the offense of adultery, the Government did not prove he was a married man.[5] We need only consider whether the specification was defective.

### III

■ As an allegation of mere wrongful sexual intercourse, the specification lacks an averment (and proof) of "such conditions of publicity or scandal as to enter that area of conduct given over to the police responsibility of the military establishment." *United States v. Snyder, supra* at 427, 4 CMR at 19.[6] As an allegation of "adultery," it lacks utterly the essence of the offense—that at least one of the parties is married to another person. *See generally* 2 Am.Jur.2d Adultery and Fornication § 24 at 976; *United States v. Neville,* 7 CMR 180, 190 (ABR), *pet. denied,* 7 CMR 84 (1952).

The Government nonetheless urges us to adopt the opinion of the Court of Military Review, which found that the specification was not fatally defective because, in their view,

> we find in the words "wrongfully have sexual intercourse" in addition to the words "a woman not his wife" an implication that one of the parties had to be married.... [H]e [the accused] was on notice of the offense. He continued to defend against the offense of adultery. There is no doubt that the record will protect appellant from further prosecution.

32 MJ 588, 589 (1991).

The Court of Military Review reached this conclusion after a thoughtful analysis of several recent decisions of this Court: *United States v. Bryant,* 30 MJ 72 (CMA 1990); *United States v. Brecheen,* 27 MJ 67 (CMA 1988); and *United States v. Watkins,* 21 MJ 208 (CMA 1986). These cases, however, all express a consistent theme. Although each of the specifications in the three cases was defective to some degree, all of them clearly alleged that the accused had committed a particular offense under the Uniform Code, and the time, place, and nature of the offense were clearly implied in the language of the *Charge* and *specification.*

■ Here, in contrast, the essence of criminality was not even implied. The mere use of words such as "wrongfully have sexual intercourse" in conjunction with "a woman not his wife" implies nothing more than classic fornication, not that one of the parties is married. We note that one element of adultery requires *wrongful* sexual intercourse; a separate element requires that at least one of the parties be married. Para. 62b. Thus, an allegation of the wrongfulness of the intercourse is independent, not redundant, of marital status. The wrongfulness of the act obviously relates to *mens rea* (not elsewhere specified amongst the elements) and lack of a defense, such as excuse or justification. Accordingly, in omitting an allegation of marriage from the specification, the Government omitted the quintessential hallmark of adultery; and the specification as drafted simply does not state an offense. *United States v. Clifton,* 11 MJ 842 (ACMR 1981), *rev'd on other grounds,* 15 MJ 26 (CMA 1983); *see United States v. Garrett,* 17 MJ 907 (AFCMR 1984).

The decision of the United States Army Court of Military Review as to specification 2 of Charge II is reversed. The finding of guilty thereon is set aside, and that specification is dismissed. The record of trial is returned to the Judge Advocate General of

---

5. *Contra:* The PFC testified that when she "asked him was he married ... he told me that he was separated and that his wife lived in Georgia."

6. Under a charge of violating a training or fraternization regulation, of course, no allegation or showing of prejudice to good order and discipline or service discredit is required.

the Army for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

Judges CRAWFORD, GIERKE, and WISS did not participate.