*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Richard K. PRICE Jr., Airman First Class**
United States Air Force, Appellant

**No. 16-0611**
Crim. App. No. S32330

Argued January 11, 2017—Decided March 3, 2017

Military Judge: Marvin W. Tubbs II

For Appellant: *Major Mark C. Bruegger* (argued); *Major Jeffrey A. Davis* (on brief); *Colonel Jeffrey G. Palomino*.

For Appellee: *Captain Tyler B. Musselman* (argued); *Gerald R. Bruce*, Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, RYAN, and SPARKS, joined.

———————

Judge OHLSON delivered the opinion of the Court.

Pursuant to his guilty pleas and pretrial agreement, Appellant was convicted at a special court-martial by a military judge sitting alone of wrongfully using cocaine on divers occasions, wrongfully using alprazolam[1] on divers occasions, wrongful possession of alprazolam with the intent to distribute, wrongful distribution of cocaine on divers occasions, wrongful distribution of alprazolam on divers occasions, and wrongful distribution of codeine, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2012). The military judge sentenced Appellant to a bad-conduct discharge, four months of confinement, and reduction to E-1. The convening authority approved the adjudged findings and sentence, which the United States Air Force Court of Criminal Appeals (CCA) then affirmed.

---

[1] Alprazolam is an antianxiety drug that goes by the trade name Xanax. As the charged and convicted offenses refer to alprazolam, we will use that name throughout this opinion.

We granted review of the following issue:

> Whether the military judge abused his discretion
> by forcing Appellant to admit to misconduct greater
> than was necessary for a provident plea.

*United States v. Price*, 75 M.J. 445, 445–46 (C.A.A.F. 2016).

We conclude that the military judge's questions during the plea inquiry were consistent with the requirements of Rule for Court-Martial (R.C.M.) 910(e). We further conclude that those questions were "closely connected" to the offenses for which Appellant was pleading guilty, and that the military judge did not "range[] far afield during the providence inquiry." *United States v. Holt*, 27 M.J. 57, 60 (C.M.A. 1988). We therefore hold that the military judge did not abuse his discretion in the instant case and we affirm the decision of the CCA.

## I. Background

On March 23, 2015, Appellant, an airman first class in the United States Air Force, entered into a pretrial agreement with the convening authority. Appellant stated therein that he understood he could withdraw his guilty plea "at any time before sentence." Consistent with his pretrial agreement, Appellant pleaded guilty to all specifications at court-martial.

During the providence inquiry, defense counsel objected four times when the military judge asked questions that extended beyond the limited, generic recitation which Appellant had given as the factual basis for his guilty plea on each specification. Those four instances are reflected below:

(1) Specification 1 alleged that Appellant wrongfully used cocaine on divers occasions. Appellant admitted to the military judge that he had used cocaine "multiple times," and the following exchange occurred:

> MJ: How many total times do you believe that you used cocaine?
>
> DC: Sir, I don't believe that he has to answer that question in order to plead guilty for this offense.
>
> MJ: I believe that he does. How many times did you use the cocaine?

ACC: [Conferring with counsel.] Six times, Your Honor.

(2) Specification 2 alleged that Appellant wrongfully used alprazolam on divers occasions. Appellant admitted to the military judge that he had used the drug "multiple times between 1 June 2014 and 10 December 2014," and the following exchange occurred:

MJ: When did you use it? Was it every month during the charged timeframe? Was there a particular period of time?

DC: Your Honor, I'm sorry, I think we're going to do this a few more times but I just want to put my objection on the record. The government has charged divers use, meaning two or more times. My client has said he used it multiple times, meaning two or more times. By getting into specifics as to how often he used the court is forcing him to give up evidence in aggravation which is the government's responsibility to provide the court. I understand that there's a difference of opinion here. I'm just going to put the objection on the record.

MJ: Understood, but what I asked was when did he use it specifically.

DC: No, I understand, but part of the question though, sir, was, was it each month and so if he answered, yes, it was each month then I think we would be up to seven at least.

MJ: When did you use the Alprazolam?

ACC: [Conferring with counsel.] It was between June 1st and to the beginning of November.

MJ: And you said it was on more than one occasion. How many times was it?

ACC: [Conferring with counsel.] Your Honor, truthfully, I'm not sure of an exact number but I would go with saying that on a weekly basis it would be between 1 to 3 times a week.

MJ: Even though you're not sure of the number, it was on more than one occasion though?

ACC: Yes, sir.

(3) Specification 4 alleged that Appellant wrongfully distributed cocaine on divers occasions. Appellant admitted to

3

the military judge that he had distributed cocaine "at least two times," and the following exchange occurred:

> MJ: How many times did [you distribute the cocaine]? Your standing, objection is noted.
>
> DC: The same objection as I've placed before, thank you, Your Honor.
>
> ACC: [Conferring with counsel.] At about [sic] six times I distributed cocaine to him.

(4) Specification 6 alleged that Appellant wrongfully distributed codeine. Appellant admitted to the military judge that he "gave" the codeine to a fellow servicemember, and the following exchange occurred:

> MJ: Did you just give it to him or did you sell it to him?
>
> DC: Your Honor, I don't believe that he needs to answer that question in order to plead guilty to this offense.
>
> MJ: Was there a sale or was it that you just gave it to him?
>
> ACC: [Conferring with counsel.] I sold the Codeine to [SrA ID].

After the providence inquiry and acknowledging he understood his rights, Appellant stated he continued to want to plead guilty. The military judge found that Appellant's guilty plea was made voluntarily and knowingly, advised Appellant that he could request to withdraw his plea any time prior to announcement of sentence, and found Appellant guilty of all six specifications in accordance with his pleas of guilty.

## II. Applicable Legal Principles

We review a military judge's decision to accept a guilty plea for an abuse of discretion, *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014), and "[t]he appellant bears the burden of establishing that the military judge abused that discretion." *United States v. Phillips*, 74 M.J. 20, 21 (C.A.A.F. 2015).

As we noted in *United States v. Weeks,* it is an abuse of discretion if a military judge accepts a guilty plea without an

adequate factual basis to support it. 71 M.J. 44, 46 (C.A.A.F. 2012). In fact, R.C.M. 910(e) explicitly states: "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). Indeed, our limited case law on this issue typically has arisen in the context of determining whether a military judge complied with this mandate to solicit sufficient detail about the underlying facts of an offense. For example, in the seminal case of *United States v. Care* we "imposed an affirmative duty on military judges, during providence inquiries, to conduct a *detailed inquiry* into the offenses charged, the accused's understanding of the elements of each offense, the accused's conduct, and the accused's willingness to plead guilty." *United States v. Perron*, 58 M.J. 78, 82 (C.A.A.F. 2003) (emphasis added) (citing *Care*, 18 C.M.A. 535, 541–42, 40 C.M.R. 247, 253–54 (1969)). In *United States v. Negron*, 60 M.J. 136, 143 (C.A.A.F. 2004), we "advised against and cautioned judges regarding the use of conclusions and leading questions that merely extract from an accused 'yes' or 'no' responses during the providency inquiry." And in *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002), we emphasized that a military judge must elicit actual facts from an accused and not merely legal conclusions.

In the course of creating this precedent, however, we also established parameters beyond which a military judge's questions must not fall in order to protect the rights of an accused who is pleading guilty. For example, in *Holt*, we held that although sworn admissions made during a providence inquiry can be admissible for sentencing purposes as aggravating evidence, the use of such admissions is restricted if "the military judge has ranged far afield during the providence inquiry," such as when a military judge explores "uncharged conduct [that] is not closely connected to the offense to which the accused has pleaded guilty." 27 M.J. at 60. In *United States v. Irwin,* we reaffirmed *Holt*, but in that case we held that the appellant's responses during the providence inquiry "did not 'range[] far afield' but, instead, were relevant as they directly described circumstances surrounding the offenses without venturing into unrelated matters." 42 M.J. 479, 482 (C.A.A.F. 1995); *see id.* at 481–82.

### III. Discussion

Appellant essentially argues that in the course of conducting the providence inquiry in this case, the military judge abused his discretion by eliciting too much information about the underlying offenses.[2] He further argues that he was prejudiced by this action because "the military judge considered [the additional information] in deliberating upon an appropriate sentence in Appellant's case." Our analysis of this argument need not detain us long.

It is evident from the record that the military judge asked the questions now at issue in order to comply with the requirements of the Rules for Courts-Martial and this Court's precedent. Specifically, the military judge was seeking additional information from Appellant in order to "satisfy [himself] that there [was] a factual basis for the plea," R.C.M. 910(e), and to fulfill his *"affirmative duty ...* to conduct a *detailed inquiry* into ... the accused's conduct." *Perron,* 58 M.J. at 82 (emphasis added) (citing *Care,* 18 C.M.A. 541–42, 40 C.M.R. at 253–54).

But more importantly for the purposes of the instant appeal, it is equally evident from the record that the military judge's questions did not run afoul of applicable case law regarding the permissible scope of such inquiries. Specifically, the questions were "closely connected" to the offenses to which Appellant was pleading guilty, and they did not "range[] far afield." *Holt,* 27 M.J. at 60.[3] Consequently, the information elicited from the accused by those questions was admissible during the sentencing phase.[4]

---

[2] Appellant vigorously contested the scope of his waiver at trial, and thus we conclude that Appellant has not waived his right to litigate the issue presented today.

[3] We note, of course, that an accused retains the right to withdraw from a guilty plea in a timely manner if he or she believes a military judge's questions are objectionable. In the alternative, an accused can resolutely and respectfully decline to answer specific questions posed by a military judge, although this action may cause the military judge to decide not to accept the guilty plea. In the instant case, Appellant did not avail himself of either option.

[4] Contrary to Appellant's argument, even if this Court were to determine that the military judge "ranged far afield" or his ques-

In reaching this decision, we conclude that the standards set forth in *Holt* nearly three decades ago continue to correctly, adequately, and succinctly capture the proper boundaries for questions by a military judge during a providence inquiry. Moreover, we conclude that these boundaries, which we recognize are quite broad, are consistent with the substantial deference we show military judges when they decide which facts to elicit during a providence inquiry in order to establish a factual basis for a guilty plea. *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Therefore, we deem Appellant's request that we further refine these boundaries as unwarranted.

## IV. Decision

We hold that the military judge did not abuse his discretion in this case by eliciting additional details of the charged offenses during Appellant's providence inquiry. Therefore, the decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

tions were not closely connected to the offenses, there is no basis to conclude that the additional facts obtained from Appellant either increased Appellant's sentence exposure or caused the military judge to increase the punishment he otherwise would have imposed in this case. Regardless of the number of uses or mode of distribution, the sentence exposure to the offenses (as charged in this case) remained the same. In terms of the sentence that was adjudged, we cannot conclude that there was any prejudice. Appellant admitted from the outset of the providence inquiry that he wrongfully used cocaine on divers occasions, wrongfully used alprazolam on divers occasions, wrongfully possessed alprazolam with the intent to distribute, wrongfully distributed cocaine on divers occasions, wrongfully distributed alprazolam on divers occasions, and wrongfully distributed codeine. Under those factual circumstances, a sentence of four months of confinement, reduction to E-1, and a bad-conduct discharge was anything but harsh.