*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Virginia S. MORATALLA,
**Boatswain's Mate Second Class**
United States Navy, Appellant

**No. 21-0052**
Crim. App. No. 201900073

Argued October 5, 2021—Decided December 6, 2021

Military Judges: Hayes C. Larsen and Warren A. Record

For Appellant: *Captain Jasper W. Casey*, USMC (argued); *Lieutenant Clifton E. Morgan III*, JAGC, USN.

For Appellee: *Lieutenant Commander Jeffrey S. Marden*, JAGC, USN (argued); *Lieutenant Colonel Nicholas L. Gannon*, USMC, *Major Kerry E. Friedewald*, USMC, and *Brian K. Keller*, Esq. (on brief); *Major Clayton L. Wiggins*, USMC.

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, Judge HARDY, and Senior Judge ERDMANN, joined.

————————

Chief Judge OHLSON delivered the opinion of the Court.

A military judge sitting alone as a general court-martial convicted Appellant, pursuant to her pleas, of a number of offenses, including one specification of bank fraud in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018); *United States v. Moratalla*, No. NMCCA 201900073, 2020 CCA LEXIS 242, at *1–2, 2020 WL 4280688, at *1 (N-M. Ct. Crim. App. July 27, 2020) (unpublished). The military judge sentenced Appellant to a reduction to E-1, forfeiture of $1,000 per month for sixty months, confinement for sixty months, and a dishonorable discharge. The convening authority approved the sentence as adjudged as to the reduction in grade, forfeitures, and discharge, and, pursuant to the pretrial agreement, approved forty-eight months of confinement with 163 days of credit. The United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) affirmed the findings and sentence as approved by the convening authority.

*Moratalla*, 2020 CCA LEXIS 242, at \*12, 2020 WL 4280688, at \*5.

We granted review of the following issue: "Whether the Appellant's guilty plea to bank fraud under 18 U.S.C. § 1344 was improvident." *United States v. Moratalla*, 81 M.J. 166, 166–67 (C.A.A.F. 2021) (order granting review).

We conclude that Appellant's plea was provident. The military judge established a sufficient basis for the plea, especially in light of the breadth of liability under the federal bank fraud statute. And while Appellant's responses to the military judge's inquiries arguably raised *some* question as to the providence of her plea, those responses—in the full context of the colloquy—did not give rise to a *substantial* question. We therefore hold that the military judge did not abuse his discretion in accepting Appellant's guilty plea and we affirm the decision of the NMCCA.

## I. Background

Appellant engaged in "a variety of economic fraud schemes involving financial institutions and individuals." *Moratalla*, 2020 CCA LEXIS 242, at \*2, 2020 WL 4280688, at \*1. In regard to the specific charge at issue in this appeal, Appellant pleaded guilty to an Article 134, UCMJ, specification for having committed bank fraud under 18 U.S.C. § 1344. Specifically, Appellant admitted that she did:

> [K]nowingly *execute or attempt to execute a scheme or artifice to defraud a financial institution*, ABNB Federal Credit Union, or to obtain moneys, funds, credits, and assets owned by or under the custody and control of the ABNB Federal Credit Union, by means of false or fraudulent pretenses, representations, or promises . . . .

(Emphasis added.)

According to her stipulation of fact, Appellant sought funds to invest in her personal "house flipping business."[1] In

---

[1] Because a stipulation of fact is binding on the court-martial and may not be contradicted by the parties, we accept as true all of the *facts*, but not necessarily the *legal conclusions*, contained in the parties' stipulation. *United States v. Simpson*, 81 M.J. 33, 36 & n.3 (C.A.A.F. 2021); *see* Rule for Courts-Martial (R.C.M.) 811(e).

order to secure those funds, Appellant enlisted the help of a coworker—BM2 Whiskey[2]—who agreed to apply for a loan at ABNB Federal Credit Union. Their plan was for BM2 Whiskey to falsely represent to ABNB that he would use the loan proceeds to purchase Appellant's vehicle. However, neither BM2 Whiskey nor Appellant believed that BM2 Whiskey was actually purchasing the vehicle. Rather, their intent was for the funds obtained from ABNB to be treated as an investment by BM2 Whiskey in Appellant's business. Nevertheless, at the time of the loan transaction, Appellant transferred the vehicle's title to BM2 Whiskey—a hallmark of a legal sale of a vehicle from one individual to another. The transfer of the title raised the specter that—despite her intentions—Appellant did not commit bank fraud because she actually did sell her vehicle to BM2 Whiskey consistent with the terms of the loan agreement.

## II. Applicable Legal Principles

Article 134, UCMJ, extends court-martial jurisdiction over "noncapital crimes or offenses which violate [f]ederal law." *Manual for Courts-Martial, United States* pt. IV, para. 60.c.(1) (2016 ed.) (*MCM*); *see* 10 U.S.C. § 934 (2018). One such federal offense is contained in the federal bank fraud statute, which makes it a crime to:

> [K]nowingly execute[], or attempt[] to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . .

18 U.S.C. § 1344 (2018).

Before accepting a guilty plea, a military judge must ensure that there is a factual basis for the accused's plea. *United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969); R.C.M. 910(e). "[A] factual predicate [for a plea of guilty] is

---

[2] For the sake of clarity, we adopt the pseudonym used by the lower court.

sufficiently established if 'the factual circumstances as revealed by the accused himself objectively support that plea . . . .' " *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (third alteration in original) (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980)). A military judge's failure to obtain an adequate factual basis for a guilty plea constitutes an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). However, we afford military judges significant deference on this point and we grant them substantial leeway in conducting providence inquiries. *See United States v. Caldwell*, 72 M.J. 137, 144 (C.A.A.F. 2013) (noting that military judges are afforded significant deference in obtaining a factual basis for a plea); *United States v. Price*, 76 M.J. 136, 139 (C.A.A.F. 2017) (noting that the range of permissible questioning in this context is "quite broad"). Nevertheless, "a military judge must elicit *actual facts* from an accused and not merely legal conclusions." *Price*, 76 M.J. at 138 (emphasis added).

In determining whether a military judge abused his or her discretion, we apply the "substantial basis" test. Specifically, we ask "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322. That is, despite the existence of an otherwise adequate basis for a plea, "[i]f an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a)). However, "a 'mere possibility' of conflict" is not enough, *United States v. Riddle*, 67 M.J. 335, 338 (C.A.A.F. 2009) (quoting *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007)), and we "giv[e] broad discretion to military judges in accepting [guilty] pleas . . . because [we recognize that] facts are by definition undeveloped in such cases." *Inabinette*, 66 M.J. at 322. After all, "this is a guilty plea, folks." *Faircloth*, 45 M.J. at 174 (alteration in original removed) (internal quotation marks omitted) (citation omitted).

Even if a guilty plea is later determined to be improvident, a reviewing court may grant relief only if it finds that the

military judge's error in accepting the plea "materially prejudice[d] the substantial rights of the accused." Article 45(c), UCMJ.

### III. Discussion

Appellant argues before this Court that her plea was improvident. She first notes her statement during the providence inquiry that she transferred the title of her vehicle to BM2 Whiskey at around the same time as the bank loan and gave BM2 Whiskey possession of the vehicle soon thereafter. She then argues that these facts created a material inconsistency with her plea of guilty to the bank fraud specification because her actions were entirely consistent with a bona fide car sale. Appellant concludes by arguing that, under these circumstances, the military judge erred by failing to either resolve the conflict or reject the plea.[3]

We note that during the providence inquiry, the military judge correctly explained to Appellant the elements of bank fraud and then took care to give Appellant the opportunity to explain how her conduct matched those elements. As noted above, the pertinent charge expressly averred that Appellant did "knowingly execute or *attempt* to execute a scheme or artifice to defraud a financial institution." (Emphasis added.) Further, in accordance with the language of the charge, the military judge specifically asked Appellant whether she "execute[d] or *attempt*[*ed*]" such a scheme, and she admitted that she did. (Emphasis added.) Indeed, over the course of the colloquy, the military judge asked Appellant more than fifty questions regarding this specific offense. For example, the military judge asked Appellant, "[W]hy did you have [BM2 Whiskey] take a loan on the car instead of taking a loan on the car yourself?" Appellant explained that she "wasn't qualified for the loan." The military judge also asked why Appellant chose this specific scheme. Appellant explained that a loan of the type she chose to seek has "a lower interest rate . . . and it's easier for a person to [get a] loan [if they have] . . .

---

[3] During the colloquy, Appellant stated that "the title and registration w[ere] transferred to [BM2 Whiskey]." A similar statement is present in the stipulation: "The registration and title are in [BM2 Whiskey]'s name."

collateral." Summing up what Appellant had told him, the military judge asked:

> MJ: So you and [BM2 Whiskey] agreed that he would lie to ABNB Credit Union and tell them he was buying the car?
>
> ACC: Yes, Your Honor.
>
> MJ: And in return, they would give him a better loan than he might have gotten had the true facts been known?
>
> ACC: Yes, Your Honor.
>
> MJ: And by telling ABNB Credit Union he was purchasing the car, they would know that if he were to default, they could go to his place of residence and repossess the car?
>
> ACC: Yes, Your Honor.
>
> . . . .
>
> MJ: And you knew that their collateral would not be located where they thought it was located?
>
> ACC: Yes, Your Honor.
>
> . . . .
>
> [MJ:] So the scheme with [BM2 Whiskey], did you specifically intend to defraud ABNB Federal Credit Union?
>
> ACC: Yes, Your Honor.
>
> MJ: In other words, you knew that your actions would lead them to take actions they would not take otherwise, right?
>
> ACC: Yes, Your Honor.
>
> MJ: And in addition to specifically intending to defraud ABNB . . . you engaged in a scheme that led them . . . to be presented with material false representations, right?
>
> ACC: Yes, Your Honor.

In assessing "the 'full context' of the plea inquiry," *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (quoting *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995)), it is clear that Appellant's actions satisfied the elements of the bank fraud statute. We highlight the fact that the statute "punishes not [only] 'completed frauds,' but . . . [also] fraudulent '*scheme*[s],' " *Loughrin v. United States*, 573 U.S. 351, 364

(2014) (alteration in original) (emphasis added) (quoting *Neder v. United States*, 527 U. S. 1, 25 (1999)), including *attempted* fraudulent schemes.

In light of Appellant's conduct and the breadth of this statute, we conclude that Appellant's actions constituted—at a minimum—an *attempt* to execute a *scheme* to defraud ABNB. "To be guilty of an attempt . . . the defendant [must] (1) [have] had the intent" to commit the substantive offense, "and (2) [have taken] a substantial step toward" its completion. *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011).[4] In the instant case, Appellant's stipulation of fact and her statements during the plea colloquy established that: Appellant

---

[4] In *United States v. Schell*, we held that, "because [the military judge] failed to instruct [the appellant] that he had to take a substantial step . . . in order to plead guilty to an attempt under Article 134, UCMJ," the appellant's plea was improvident. 72 M.J. 339, 346 (C.A.A.F. 2013). That case is distinguishable, however, because here the substantive bank fraud statute incorporates attempt as an avenue of liability. *See* 18 U.S.C. § 1344 (2018). Because the military judge correctly referenced attempt as a mode of liability when explaining the offense to Appellant, and because Appellant stated facts amounting to an attempt, Appellant's plea was provident.

We note, however, that Appellant did not expressly use the term "attempt" in the portion of the stipulation of fact that addressed Charge V, Specification 2. Appellant's stipulation for this specification expressly admitted only that she "knowingly executed a scheme to defraud ABNB." Nevertheless, the specification included as a mode of liability an "attempt to execute a scheme or artifice to defraud," and on more than one occasion during the plea inquiry, the military judge explained that Appellant could be guilty on the basis either that she "knowingly executed *or* attempted to execute a scheme to defraud a financial institution." (Emphasis added.) Appellant was therefore sufficiently informed of the fact that the offense to which she was pleading guilty included attempt as an avenue of liability. Thus, although Appellant was not charged with an attempt under Article 80, UCMJ, 10 U.S.C. § 880 (2018), her plea was provident on an attempt theory of liability because her plea expressly adopted the "attempt" language contained within the bank fraud statute itself.

concocted a "plan, pattern or course of action" designed to defraud[5] by obtaining an auto loan from ABNB predicated on statements which Appellant believed to be false; Appellant had the specific intent to defraud the credit union; and Appellant took a substantial step in furtherance of the scheme to defraud when she met with BM2 Whiskey at ABNB federal credit union to apply for the loan.

In sum, contrary to Appellant's argument, it is irrelevant to the disposition of this case whether or not Appellant actually sold her vehicle to BM2 Whiskey when she transferred the title to him. At the time this transaction occurred, Appellant subjectively believed that her actions would not effect a car sale and intended that ABNB would rely to its detriment on representations she believed to be false. Such actions clearly amount to an "attempt[] to execute[] a scheme . . . to defraud." 18 U.S.C. § 1344 (2018). We therefore conclude there is nothing in the record that raises "a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322.[6]

### IV. Decision

We hold that the military judge did not abuse his discretion by accepting Appellant's guilty plea because the facts elicited provided a sufficient basis for the plea to the offense

---

[5] *Black's Law Dictionary* similarly defines "scheme" as "[a] systemic plan" or "[a]n artful plot or plan." *Black's Law Dictionary* 1612 (11th ed. 2019).

[6] Just as an appellant's "belief in the truth of the misrepresentations may negate intent to defraud," *United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993) (quoting *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986)), an appellant's belief in the falsity of his or her statements tends to establish the intent to defraud. *See Benny*, 786 F. 2d at 1417 (noting that an accused's admission "that he falsified information submitted to . . . loan officers" meant that he "was not entitled to an intent to repay defense in [a] mail fraud instruction" because intentional misrepresentations are inconsistent with the notion that the accused had a lawful intent); *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("[S]ubjective intent to commit fraud is a wholly separate inquiry from whether the statement is objectively true.").

as charged. Therefore, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.